UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| GEORGE ANTHONY SEXTON, *et al.*, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> STATE FARM FIRE & CASUALTY ) <br> COMPANY, ) <br> ) <br> Defendant. ) | No.: 3:09-CV-535 <br> (VARLAN/SHIRLEY) |

## **MEMORANDUM OPINION AND ORDER**

This civil action is before the Court on defendant State Farm Fire & Casualty Company's Motion for Summary Judgment [Doc. 10], in which defendant moves the Court for summary judgment and submits that there is no genuine issue of material fact and defendant is entitled to judgment as a matter of law. Plaintiffs, George and Mary Sexton, have filed a response in opposition [Doc. 14], and defendant has filed a reply to plaintiffs' response [Doc. 15]. The Court heard oral argument on the pending motion and took the matter under advisement. Following oral argument, defendant submitted a supplemental brief [Doc. 18] to address new authority brought up by plaintiffs' counsel at oral argument.

After a thorough consideration of the pleadings, arguments of the parties, and the record as a whole, and for the reasons set forth herein, defendant's motion for summary judgment will be denied.

**I.     Relevant Facts**

Defendant issued a homeowners insurance policy (the "insurance policy") to plaintiffs, insuring plaintiffs' residence (Coverage A) and their personal property (Coverage B) [*see* Doc. 13]. The insurance policy contained the following provision:

**SECTION I AND SECTION II - CONDITIONS**

> **2.     Concealment or Fraud.** This policy is void as to you and any other insured, if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

[*Id.*, p. 32].

On October 27, 2008, while the insurance policy was in effect, plaintiffs' home was completely destroyed by fire [Doc. 1-1, ¶ 5]. Following the fire, plaintiffs tendered a claim to defendant for losses under both Coverage A and Coverage B [*Id.*, ¶¶ 6-8; Doc. 14-3, ¶¶ 6-7]. On December 18, 2008, and again on February 5, 2009, plaintiffs prepared and signed, under penalty of prosecution. "Personal Property Inventory Forms" ("PPIFs") detailing the contents of their home [Docs. 12-1; 12-2]. Together, the PPIFs consist of 57 pages of personal property and household items plaintiffs claim were destroyed in the fire. In total, defendant asserts that plaintiffs claim in the PPIFs a total loss of $143,558.70 in personal property under Coverage B. Defendant subsequently refused to pay plaintiffs' claim [Doc. 1-1, ¶ 8].

In light of defendant's refusal to pay, plaintiffs initiated this lawsuit, seeking to recover fully under their insurance policy [Doc. 1-1]. Plaintiffs also seek a 25% bad-faith

refusal penalty under Tenn. Code Ann. § 56-7-104(a) and recovery for violations of the Tennessee Consumer Protection Act (the "TCPA"), Tenn. Code Ann. §§ 47-18- 101, *et seq*.

Defendant filed this motion for summary judgment stating that it properly denied plaintiffs' claim because plaintiffs engaged in intentional concealment and misrepresentation during defendant's investigation of plaintiffs' loss from the fire. As support of this position, defendant points out that on April 23, 2008, just over six months before the fire, plaintiffs filed for Chapter 13 bankruptcy protection in the U.S. Court for the Eastern District of Tennessee (the "Bankruptcy Court"). Pursuant to their Chapter 13 petition, plaintiffs filed a "Schedule B - Personal Property" statement ("Schedule B") [Doc. 14-3, ¶¶ 9-10; Doc. 12-5, p. 4]. In Schedule B, as the current value of their interest in personal property, plaintiffs listed $2,600.00, this amount including $1,500.00 for "LR Suite, BR Suite, laptop, TV," $300.00 for clothing, and $800.00 for jewelry [Doc. 14-3, ¶ 10; Doc. 12-5, p. 4]. Plaintiffs listed no other personal property, save for a vehicle, and claimed all the aforementioned property to be exempt from creditors [Doc. 12-5]. Plaintiffs acquired almost no personal property between the filing of their Chapter 13 petition on April 23 and the fire of their home on October 27 [Doc. 14-3, ¶ 11]. Plaintiffs' Chapter 13 petition was discharged on October 11, 2008, a few weeks prior to the fire, for failure to make payments to the trustee [Doc. 14-3, ¶ 12].

Defendant also asserts that on August 6, 2008, plaintiff Mary Sexton ("Mrs. Sexton") was charged with fraudulent use of a credit card, in violation of Tenn. Code Ann. § 39-14-118 [Doc. 12-8]. In seeking appointment of counsel, Mrs. Sexton filed out a Uniform

Affidavit of Indigency which required her to list all assets owned in the proceeding six months [Doc. 14-3, ¶ 15; Doc. 12-10]. On the affidavit, Mrs. Sexton listed her only assets as being her home and a Chevrolet Tahoe [Doc. 12-10]. In response to a query asking for "all assets not already listed," Mrs. Sexton wrote "N/A" [*Id.*]. Mrs. Sexton pled guilty to fraudulent use of a credit card on September 2, 2008, for which she received probation and judicial diversion.[1] On August 13, 2008, plaintiff George Sexton ("Mr. Sexton") pled guilty to attempted forgery, in violation of Tenn. Code Ann. § 39-14-114, for which he was ordered to pay restitution totaling $2,360.00 by September 17, 2008 [Doc. 14-3, ¶ 16].

## II. Analysis

### A. Standard of Review

A court may grant summary judgment only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). The Court views the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec.*

---

[1] Plaintiffs assert that Mrs. Sexton did not plead guilty but was offered judicial diversion and that her record will be erased once her probationary period ends [Doc. 14-3, ¶¶ 13-14]. This assertion, however, is belied by the record. Defendant has submitted a judgment from the Circuit Court of Scott County, entered on September 2, 2008, providing that Mrs. Sexton entered a "Guilty Plea – Pursuant to 40-35-313" to fraudulent use of a credit card, and that she was placed on 6 years probation [Doc. 12-8].

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp., Inc.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Catrett*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

### B. Post-Loss Conduct Following the Issuance of an Insurance Policy

In *McConkey v. Continental Ins. Co.*, 713 S.W.2d 901 (Tenn. App. 1984), the Tennessee court of appeals noted that "[p]olices of fire and property indemnity insurance usually provide that any fraud or false swearing on the part of the insured . . . shall relieve the insurer from liability." *McConkey*, 713 S.W.2d at 906 (quoting 44 Am. Jur. 2d Insurance § 1371 at 299-300). In *Boston Marine Ins. Co. v. Scales*, the Tennessee Supreme Court distinguished between false statements made in the application for insurance from those made subsequent to the issuance of the policy. 49 S.W. 743 (1899). According to the *Boston Marine* court, voiding an insurance policy after a loss occurs is "in the nature of a penalty or forfeiture" and in such a case, "a strict construction should be adopted, and the forfeiture not be enforced except on the plainest grounds, if at all." 49 S.W. at 746.

Following *Boston Marine*, courts in Tennessee have consistently noted that material misrepresentations made in a proof of loss statement do not void an insurance policy, unless evidence establishes, on the plainest grounds, that the misrepresentations were willfully and knowingly made with the intent to deceive or defraud the insurer. *See Trice v. Commercial Union Assurances Co., Ltd.*, 334 F.2d 673, 676 (6th Cir. 1964); *Nix v. Sentry Ins.*, 666 S.W.2d 462, 464 (Tenn. App. 1983). While the requisite knowledge and intent "can . . . be inferred from all of the circumstances under the record[,]" *Trice*, 334 F.2d at 676, the insurer has the burden of proving that the insured intended to deceive or defraud the insurer. *Wassom v. State Farm Mut. Auto. Inc. Co.*, 173 S.W.3d 775, 783 (Tenn. Ct. App. 2005). Thus, when an insurer raises the defense of fraud in connection with a claim made

subsequent to the issuance of a policy, in order to void the policy, the insured's false statements must be willfully false in some material matter and made with the intent to deceive the insurer. *Joyner v. Omaha Prop. & Cas. Ins. Co.*, No. 02A01-9301-CV-00021, 1993 WL 295049, at *5 (Tenn. Ct. App. W.S. Aug. 4, 1993); *Baker v. Nationwide Mut. Ins. Co.*, 646 S.W.2d 440, 443 (Tenn. Ct. App. 1982). Intent to deceive is also a question of fact. *Joyner*, 1993 WL 295049, at *5.

In *Wassom v. State Farm Mut. Automobile Ins. Co.*, a case involving an automobile insurance policy, the Tennessee court of appeals affirmed the trial court's finding that the plaintiff had made willful material misrepresentations subsequent to the issuance of her policy. 173 S.W.3d at 785. The trial court had concluded that the plaintiff's misrepresentations, which included lying about how the wreck of her vehicle occurred, were made with the intent to deceive the defendant insurer. *Id.* On appeal, the plaintiff argued that she had no intent to deceive the defendant insurer because she was only trying to protect a third party driver involved in the wreck from criminal prosecution. *Id.* at 783. The court of appeals rejected the plaintiff's argument, noting that even if the plaintiff's misrepresentations were made for the purpose of protecting the third party, this "[did] not change the undeniable fact that [the plaintiff] intended to deceive" the defendant insurer. *Id.* at 784. The court of appeals noted in particular that the plaintiff had admitted at her deposition that she lied to the defendant insurer "over and over again and in fact lied under oath and continued this course of deception up until the time . . . her 'story' fell apart[,]" that the plaintiff "lied about whether she loaned the car to a friend, lied about knowing who was

7

driving the car when it was wrecked, [and] submitted a sworn affidavit with false testimony, etc." *Id.* After considering this evidence of intent to deceive, the court of appeals agreed that the defendant insurer was entitled to summary judgment because the plaintiff's statements were made with the intent to deceive and constituted willful, material misrepresentations having to do with her insurance policy. *Id.* at 786.

In *Smith v. Fireman's Fund Ins. Co.* ("*Fireman's Fund*"), an unpublished opinion from the U.S. Court of Appeals for the Sixth Circuit, the court of appeals affirmed the district court's conclusion that the plaintiffs had made material misrepresentations regarding the valuation and acquisition of their personal property. 16 F.3d 1221 (Table), 1994 WL 6043, at *4 (6th Cir. Jan 7, 1994). In its findings, the district court noted that the plaintiffs had engaged in a pattern of bad faith and misrepresentation of facts in attempting to justify claims for loss in their contents inventory submitted to the defendant insurance company following a fire in their home. *Fireman's Fund*, 1994 WL 6043, at *2. The district court noted that, although the plaintiffs were experiencing financial difficulties, they justified their claims for large amounts of personal property by asserting that they had made large household purchases with cash belonging to their daughter which she, in turn, had inherited from a deceased aunt. *Id.* at *1-*2. The district court found these statements to be "wholly incredible" because the daughter was eight or nine years of age and the deceased aunt was destitute and incapable of transferring wealth. *Id.* at *2. The district court characterized the plaintiffs' statements as fabrications involving a "complicated series of untraceable gratuitous transfers from [the] deceased aunt." *Id*. The district court also noted that "at

8

trial[,] plaintiffs exhibited a remarkable ability to testify untruthfully[,]" *id.*, and that the plaintiffs made additional misrepresentations on a statement of financial affairs regarding the value of a piece of real estate and misrepresented to a claims adjuster their income from a dog kennel business. *Id.* at *2 n.6. The court of appeals affirmed the district court's finding of material representations. *Id.* at *4.

A different result was reached in *Matthews v. Auto Owners Mut. Ins. Co.*, 680 F. Supp. 287 (M.D. Tenn. 1988) In *Matthews*, the plaintiff had an insurance policy covering his home and personal property. 680 F. Supp. at 287. After the plaintiff's home was destroyed by fire, he submitted a sworn proof of loss statement to the defendant insurer listing personal property items he claimed were destroyed. *Id.* It was determined later, however, that several of the claimed items were not actually in his home at the time of the fire. *Id.* The defendant insurer refused to pay the claim, asserting that the plaintiff could not recover because he knowingly made material misrepresentations in his proof of loss statement which, under the "concealment or fraud" provision in the plaintiff's policy, rendered the entire policy void. *Id.* The district court disagreed, noting that the plaintiff admitted at his deposition to misrepresenting the items in his proof of loss because "based upon a conversation he had with an . . . insurance agent, he thought he was required to do so." *Id.* The district court also noted that other testimony indicated that the plaintiff was in a confused mental state when he completed the proof of loss and that he stated he "never expected [the defendant insurer] to pay for all of the items listed in the proof of loss statement." *Id.* After citations to *McConkey* and *Boston Marine*, the district court observed

9

that "material misrepresentations made in a proof of loss statement do not void an insurance policy, unless evidence establishes, on the plainest grounds, that the misrepresentations were willfully and knowingly made with the intent to deceive or defraud the insurer." *Id.* at 289 (citing *Trice*, 334 F.2d at 676). The district court concluded that a genuine issue of fact remained concerning whether the plaintiff misrepresented "the extent of his personal property loss *with the intent to deceive or defraud*" the defendant insurer. *Id.* (emphasis in original).

In this case, defendant asserts that the substantial difference between the $2,600.00 value of the personal property plaintiffs listed on Schedule B, and the more than $140,000.00 worth of items plaintiffs listed in the PPIFs, constitutes a misrepresentation for which defendant properly denied plaintiffs' claim pursuant to the "Concealment or Fraud" provision of the insurance policy. In an affidavit, plaintiffs assert that the difference between the amounts listed in Schedule B and the amounts listed in the PPIFs is because they were instructed by their bankruptcy attorney to put "yard sale" prices on their household items, not the cost to replace the items, and thus, the values of the property listed on Schedule B are not the same as the values on the PPIFs plaintiffs provided to defendant as part of their claim under the insurance policy. In reply, defendant argues that the denial of plaintiffs' claim had nothing to do with the asset valuation used by plaintiffs in reporting their loss. Rather, defendant argues that the denial of the claim was based on the fact that plaintiffs' reported a loss in the PPIFs that was approximately 500% greater than the loss in Schedule B, and because Schedule B only listed seven items while the PPIFs contained over 50 pages with over 500 items. Such a large discrepancy is especially suspect, defendant argues, given that

10

plaintiffs have admitted that they acquired "little additional property" between filing their Chapter 13 petition and the October fire [*see* Doc. 14-4, p. 4].

During oral argument, plaintiffs submitted a second explanation for the discrepancy in the amount of claimed items. Plaintiffs asserted that the personal property items claimed in the PPIFs included their children's property and disposable property and that these items were not listed in their bankruptcy filings per instructions by their bankruptcy attorney. In the supplemental brief, defendant asserts that plaintiffs listed the "actual cash value" of the items listed in the PPIFs and argue that this designation flies in the face of plaintiff's "yard sale" valuation explanation and shows that the discrepancy is indeed material.

The Court agrees with defendant that the substantial discrepancy between the amount and value of the personal property listed in Schedule B and the amount and value of personal property loss plaintiffs claim in the PPIFs is certainly suspect and material. The Court also agrees with defendant that the "yard sale" valuation and the disposable and children's property explanations do not resolve this substantial discrepancy. The Court, however, does not find the discrepancy and plaintiffs' explanations for the discrepancy to be evidence that establishes "on the plainest grounds," plaintiffs' intent to deceive or defraud defendant. *See Trice*, 334 F.2d at 676.

The evidence in this case does not rise to the level of intent to deceive noted in *Wassom*, in which there was evidence that the plaintiffs lied repeatedly in depositions and in affidavits, nor does this evidence rise to the level of intent to deceive noted in *Fireman's Fund*, in which there was evidence of a fabricated story to explain the plaintiffs' elaborate

11

claims of property loss, evidence that the plaintiffs had testified untruthfully on the stand, and evidence that they had made additional misrepresentations in a statement of financial affairs and to a claims adjuster. The Court also notes that in *Fireman's Fund*, the district court, sitting as finder of fact in a bench trial, was able to make credibility determinations regarding the plaintiffs' testimony and the truthfulness of their claims. 1994 WL 6043, at *1, *3. This Court, on the other hand, is reviewing the matter pursuant to a summary judgment request in which the Court does not judge the weight or the credibility of the evidence. *See Anderson*, 477 U.S. at 249. While the substantial discrepancy between Schedule B and the PPIFs trend more toward a showing of material misrepresentations and deception than the facts of *Matthews*, the Court cannot conclude that the evidence establishes, on the plainest grounds, that the claims in the PPIFs are misrepresentations made willfully and knowingly and with the intent to deceive or defraud defendant.[2]

While Tennessee law is clear that "[f]raud in the claims process can prevent recovery on a policy[,]" *Adams v. Tennessee Farmers Mut. Ins. Co.*, No. W2009-00931-COA-R3-CV, 2010 WL 1444477, at *12 (Tenn. Ct. App. Apr. 13, 2010) (citation omitted), Tennessee law is also clear that "false statements or false swearings made subsequent to the issuance of the policy and in connection with a loss are treated differently than those made in the application for insurance." *Joyner*, 1993 WL 295049, at *3. Because the insurer has the burden of

---

[2]The Court has noted the evidence of record that both plaintiffs have engaged in offenses involving fraud and forgery. However, because the Court has no indication that these charges relate to plaintiffs' property loss claims in the PPIFs, the Court cannot conclude that these convictions constitute evidence that plaintiffs' made material misrepresentations with the intent to deceive in relation to their statements in the PPIFs.

proving that such false statements are "willfully false in some material matter and [were] made with the intent to deceive the insurer," *id.* at *5, the Court cannot conclude that defendant has, as yet, satisfied this burden. Even assuming plaintiffs' statements in the PPIFs were misrepresentations of material facts relating to the insurance policy, the Court does not have sufficient evidence before it to make a determination that plaintiffs made these statements with the requisite intent to deceive or defraud defendant. *See Baker*, 646 S.W.2d at 443.

### C. Judicial Estoppel

Defendant also asserts that plaintiffs should be judicially estopped from seeking to recover from defendant any personal property not initially listed in Schedule B of their Chapter 13 petition. Defendant asserts that plaintiffs' inconsistent statements regarding their property in Schedule B and this case constitute inconsistent statements before a court of law that would subvert the judicial process. In response, plaintiffs assert that because their Chapter 13 petition and case was dismissed and was not an adjudication of bankruptcy as set forth in *Smith v. Allstate Ins. Co.*, No. 1:05-CV-329, 2006 WL 3833533 (S.D. Ohio Dec. 29, 2006), cited by defendant, the application of judicial estoppel to this case is not appropriate.

This Court has previously noted that:

> Judicial estoppel "bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position 'either as a preliminary matter or as a part of a final disposition.'" *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002) (quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990)). The purpose of the doctrine of judicial estoppel is to preserve "the integrity

> of the courts by preventing a party from abusing the judicial process through cynical gamesmanship." *Browning*, 283 F.3d at 776 (quoting *Teledyne Indus. Inc.*, 911 F.2d at 1218). However, the doctrine of judicial estoppel "should be applied with caution to 'avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement.'" *Eubanks v. CBSK Fin. Group, Inc.*, 385 F.3d 894, 897 (6th Cir. 2004) (quoting *Teledyne Indus., Inc.*, 911 F.2d at 1218)). The doctrine of judicial estoppel is inappropriate in cases of mistake or inadvertence. *Browning*, 283 F.3d at 776.

*White v. Wyndham Vacation Ownership, Inc.*, No. 3:08-CV-405, 2009 WL 1074800 (E.D. Tenn. Apr. 21, 2009), *aff'd*, 617 F.3d 472 (6th Cir. 2010). Given this, and contrary to plaintiffs' position, the fact that there was not an adjudication of bankruptcy in this case is not dispositive to the Court's analysis for the application of judicial estoppel. Rather, judicial estoppel may still be applied when "the first court has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition." *Reynolds v. C.I.R.*, 861 F.2d 469, 473 (6th Cir. 1988) (quoting *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 n.5 (6th Cir. 1982)). Further, the Sixth Circuit has noted that "when a bankruptcy court—which must protect the interests of all creditors—approves a payment from the bankruptcy estate on the basis of a party's assertion of a given position, that, in our view, is sufficient 'judicial acceptance' to estop the party from later advancing an inconsistent position." *Reynolds*, 861 F.2d at 473.

Moreover, in *Fireman's Fund*, discussed *supra*, in addition to finding that the plaintiffs had made material misrepresentations subsequent to the insurance policy, the Sixth Circuit affirmed the district court's finding that the plaintiffs were judicially estopped from

14

recovering under their policy any of the proceeds from assets they failed to disclose in a prior bankruptcy proceeding. *Fireman's Fund Ins. Co.*, 1994 WL 6043, at *3. The district court noted that prior to the fire the plaintiffs had filed a Chapter 7 petition for bankruptcy and in that petition the plaintiffs claimed that the total value of their assets amounted to $4,010. *Id.* at *2. The district court observed that in the contents inventory submitted to the defendant insurance company after the fire, the plaintiffs claimed $21,384.67 in assets at the time of the fire. *Id.* The district court then concluded that the plaintiffs' inconsistent positions constituted material omissions sufficient for a finding of judicial estoppel. *Id.* The Sixth Circuit affirmed, finding that the "inconsistent positions indicate that plaintiffs must be judicially estopped from claiming recovery under the insurance policy for any items they failed to disclose in the bankruptcy proceeding." *Id.* at *3. There is no indication in *Fireman's Fund* whether there was an adjudication of bankruptcy.

However, the record before the Court, consisting of plaintiffs' Chapter 13 petition, related schedules, and the order of the Bankruptcy Court dismissing plaintiffs' case for failure to pay the trustee, does not indicate whether the Bankruptcy Court adopted, as a preliminary matter, plaintiffs' position in Schedule B regarding the amount and values of their personal property. Thus, at present, the Court cannot determine whether plaintiffs should be judicially estopped from recovering under the insurance policy for the personal property they failed to disclose in their bankruptcy proceeding.

### III. Conclusion

For the reasons set forth above, defendant's for Summary Judgment [Doc. 10] is hereby **DENIED** because a genuine issue of material fact remains as to whether plaintiffs made material misrepresentations with the intent to deceive or defraud defendant and because the Court cannot determine, on the record presently before the Court, whether the Bankruptcy Court adopted, either as a preliminary matter or as part of a final disposition, plaintiffs' position regarding the assets claimed in Schedule B.

IT IS SO ORDERED.

                                             s/ Thomas A. Varlan
                                             UNITED STATES DISTRICT JUDGE